**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BILL MILLENKAMP; SUSIE
MILLENKAMP, husband and wife,
dba Millenkamp Cattle,
　　　　　*Plaintiffs-Appellees,*

　　　　　v.

DAVISCO FOODS INTERNATIONAL,
INC.,
　　　　　*Defendant-Appellant,*

　　　　　and

CARGILL INCORPORATED,
　　　　　*Defendant.*

No. 07-35299

D.C. No.
CV-03-0439-S-EJL

BILL MILLENKAMP; SUSIE
MILLENKAMP, husband and wife,
dba Millenkamp Cattle,
　　　　　*Plaintiffs-Appellants,*

　　　　　v.

DAVISCO FOODS INTERNATIONAL,
INC.,
　　　　　*Defendant-Appellee,*

　　　　　and

CARGILL INCORPORATED,
　　　　　*Defendant.*

No. 07-35318

D.C. No.
CV-03-00439-EJL

OPINION

Appeal from the United States District Court
for the District of Idaho
Edward J. Lodge, District Judge, Presiding

Argued and Submitted
September 15, 2008—Moscow, Idaho

Filed April 14, 2009

Before: J. Clifford Wallace, Stephen S. Trott and
N. Randy Smith, Circuit Judges.

Opinion by Judge N.R. Smith

## COUNSEL

Kenneth R. White, MacKenzie & Gustafson. Ltd., St. Peter, MN, and Tom Lopez and Lou Piccioni, Lopez & Kelly, P.L.L.C., Boise, Idaho, for the defendants-appellants.

Tom Arkoosh and David Heida, Arkoosh Law Offices, Chtd., Gooding, Idaho, for the plaintiffs-appellees.

**OPINION**

N.R. SMITH, Circuit Judge:

Davisco Foods International, Inc. ("Davisco") here appeals from (1) the district court judgment that it breached express and implied warranties to Bill and Susie Millenkamp (the "Millenkamps") and (2) the district court's denial of post-trial motions that would relieve Davisco of the judgment. We conclude that the district court erred in admitting evidence and giving jury instructions concerning Idaho milk permeate labeling laws and also abused its discretion in admitting Exhibits 18 and 25. These acts prejudiced Davisco. The district judge should have granted Davisco's motion for a new trial. Accordingly, we reverse the district court's denial of Davisco's motion for a new trial and remand the case to the district court for proceedings consistent with this opinion. Because the district court must conduct a new trial, the parties' arguments concerning offsets for damages, attorneys' fees, and prejudgment interest are moot.

**Facts and Procedural History**

The Millenkamps raise bovine calves in Idaho. Davisco operates the "Jerome Cheese Company," which produces milk permeate as a byproduct of its cheese-making operation. Because milk permeate is sometimes used as a source of dietary energy, protein, and minerals in livestock feeding programs, Davisco sells milk permeate to several dairies near Jerome, Idaho.

Given the use of milk permeate in other feeding programs, the Millenkamps decided to investigate using it as part of their calf feeding operation. They discussed its use in their operation with Davisco employee, Steven Ewing. Ewing admits that he provided the Millenkamps an analysis sheet that set forth the contents of Davisco's milk permeate and represented that it had a pH level of at least 6. The Millenkamps also

assert that Ewing told them that (1) he "thought" the milk permeate "would be good to feed" the calves; and (2) it should be stored in plastic tanks similar to tanks Ewing observed while touring the Millenkamps' facilities. The Millenkamps then consulted nutritionist Matt Schmitt of Cargill, Inc. After such investigation, the Millenkamps purchased milk permeate from Davisco, stored it in plastic tanks, and, beginning on May 25, 2002, incorporated it into the feed for their calves.

Within days, Bill Millenkamp noticed that several calves became sick, so he stopped feeding them milk permeate. Soon thereafter, many of the Millenkamps' calves died or failed to gain weight at a desirable rate. On June 3 and 4, 2002, the Millenkamps' veterinarian, Dr. Michael Mihlfried, conducted necropsies on three dead calves. He concluded that two of them died from rumen acidosis and the third died from a disease to which acidosis can predispose calves. Mihlfried posited that the Millenkamps stored the milk permeate at an improper temperature, which allowed lactose to ferment into a harmful lactic acid that caused the calves to fall prey to rumen acidosis.

In October 2004, the Millenkamps filed a Complaint against Davisco alleging breach of express warranties, breach of the implied warranty of fitness for a particular purpose, general negligence, and negligence per se.[1] The Millenkamps moved for summary judgment on the negligence per se claim; Davisco moved for summary judgment on all negligence claims. The district court granted summary judgment to Davisco, concluding that the Idaho economic loss rule barred recovery in negligence, even though Davisco may have been negligent per se.

The Millenkamps and Davisco proceeded to trial on the

---

[1]The Millenkamps also asserted a general negligence claim against Cargill, Inc., which Cargill settled. Accordingly, Cargill is not a party to this appeal.

Millenkamps' claims for breach of express warranty and breach of implied warranty of fitness for a particular purpose. The jury awarded damages to the Millenkamps, finding that Davisco breached those warranties. Davisco subsequently moved for judgment as a matter of law or, in the alternative, a new trial, renewing its in-trial objections to several evidentiary rulings, the jury instructions, and the sufficiency of the evidence. Davisco also asserted that Idaho law required the district court to offset the jury's damages award by the amount of the Cargill settlement. The district court denied Davisco's motions and the offset.

The Millenkamps subsequently filed a motion requesting prejudgment interest, costs and attorneys' fees. The district court denied the Millenkamps' request for prejudgment interest, but awarded attorneys' fees. Both parties timely appealed.

## Analysis

Davisco argues that the district court (A) mishandled the issue of Cargill's involvement by failing to give the jury instructions regarding (1) Cargill's comparative negligence and (2) the Millenkamps' potential responsibility for Cargill's acts under an agency theory. Davisco argues that the district court (B) should not have allowed evidence or instructed the jury concerning Idaho's statutory requirement to label milk permeate for safe use. Davisco argues that (C) the district court (1) made several erroneous evidentiary rulings by improperly admitting (a) Dr. Alois Kertz's expert testimony, (b) Exhibit 25, a letter from Davisco responding to the Millenkamps' settlement request, and (c) Exhibit 18, a letter from Cargill's nutritionist to the Millenkamps, and (2) erred by (a) rejecting Davisco's proposed spoliation of evidence jury instruction and (b) failing to give the jury a "Time of Delivery" jury instruction regarding the Millenkamps' breach of warranty theories. Davisco argues that (D) the district court erred by failing to offset the jury's damages award by the amount of the Cargill settlement. Finally, Davisco challenges

the district court's award of attorneys' fees to the Millenkamps. The Millenkamps cross appeal the district court's decision not to award them prejudgment interest.

## A

Davisco argues that the district court erred by (1) ruling that Idaho law did not require instructions regarding Cargill's comparative negligence and (2) failing to instruct the jury that the Millenkamps were responsible for Cargill's acts under Idaho agency theory, therefore allowing the jury to compare the Millenkamps' actions to Davisco's in determining whether Davisco breached the contract. We review these arguments de novo, because Davisco challenges the district court's interpretation of Idaho law while instructing the jury. *See Fireman's Fund Ins. Co. v. Alaskan Pride P'ship*, 106 F.3d 1465, 1469 (9th Cir. 1997). We affirm the district court for the reasons set forth below.

## (1)

Based on the evidence that (a) Cargill's nutritionist designed the feed mixture that was fed to the calves, and (b) Bill Millenkamp blamed Cargill for at least some of the calves' problems, Davisco argues that the district court (a) should have instructed the jury regarding Cargill's comparative negligence, because Cargill was somewhat responsible for the Millenkamps' losses and (b) should have allowed the jury to compare the fault of Cargill and Davisco. The district court declined a comparative negligence instruction. We affirm the district court's decision.

[1] Davisco was not entitled to a jury instruction regarding Cargill's comparative negligence, because negligence is not a defense to liability for breach of warranty claims in Idaho. Idaho courts "allow the defenses of misuse of a product or assumption of the risk to reduce or deny a plaintiff's recovery for breach of warranty, but [they] otherwise *deny negligence*

*as a defense.*" *Duff v. Bonner Bldg. Supply, Inc.*, 666 P.2d 650, 653 (Idaho 1983) (emphasis added). Davisco relies on *Vannoy v. Uniroyal Tire Co.*, 726 P.2d 648 (Idaho 1985), to argue that the jury should compare the fault of all parties whose conduct may have contributed to the Millenkamps' damages. Davisco's reliance on *Vannoy* is misplaced, because that case involved negligence and strict liability (defective design and inadequate warnings), therefore tort claims. *See Empire Lumber Co. v. Thermal-Dynamic Towers, Inc.*, 971 P.2d 1119, 1125 (Idaho 1998) (distinguishing *Vannoy* and holding that an affirmative tort-based defense is not a defense to contractual liability).

**[2]** Davisco's argument that "Idaho law will develop to require the comparison of fault where a party seeks consequential damages" is also unpersuasive. Davisco supports its argument by citing cases from other jurisdictions and suggesting that Idaho law will develop similar law. We disagree. Idaho law does not provide for affirmative tort-based defenses in cases involving contractual liability. *See Empire Lumber Co.*, 971 P.2d at 1125. How Idaho law will "develop" to the contrary in the future is both impossible to determine and irrelevant to our decision. Accordingly, we affirm the district court's refusal to instruct the jury regarding Cargill's comparative negligence.

**(2)**

Davisco argues, in the alternative, that (a) the jury should have been instructed that Cargill was the Millenkamps' agent, (b) the Millenkamps were responsible for Cargill's acts under agency theory, and (c) the Millenkamps' actions therefore should have been compared to Davisco's actions in determining whether Davisco breached the agreement. We disagree with Davisco's argument for giving the instruction. To the extent the instruction would assist the jury in determining Davisco's liability for breach of contract, it would have been error to give it.

**[3]** A principal is responsible for its agent's tortious acts, so long as the agent has acted within the course and scope of authority delegated by the principal. *Bailey v. Ness*, 708 P.2d 900, 902 (Idaho 1985). This cause of action, however, is grounded in breach of contract, not tort. Accordingly, whether the Millenkamps' agent—and by extension, the Millenkamps themselves—was at "fault" has no bearing on whether Davisco is liable for breach of contract. *See Duff*, 666 P.2d at 653-54; *Empire Lumber Co.*, 971 P.2d at 1125. Given Idaho law, the extent to which Cargill and/or the Millenkamps "misused" the milk permeate is only relevant to determine whether the Millenkamps' recovery for the breach should be reduced, potentially down to zero. The district court's verdict form and instructions 33 and 34 properly provided Davisco with this defense. The district court therefore did not err in rejecting Davisco's jury instructions regarding the alleged agency relationship.

**B**

Davisco challenges the district court's (1) instruction to the jury that it must consider Idaho's "legal requirement that the milk permeate contain a label" that includes "directions for use and precautionary statements" in determining whether Davisco breached its warranty to the Millenkamps, and (2) admission of Dr. Kertz's testimony regarding the development of milk permeate labeling requirements. Because Davisco asserts that the district court misapplied the law of express and implied warranties[2] in instructing the jury, we review that instruction de novo. *See Fireman's Fund Ins. Co.*, 106 F.3d at 1469. An erroneous ruling that affects the substantial rights of a party is grounds for reversal, unless it affir-

---

[2]We only resolve this issue with respect to allegations that Davisco breached an express warranty and/or an implied warranty of fitness for a particular purpose. Our analysis does not extend to breach of the implied warranty of merchantability, because the Millenkamps did not allege that Davisco breached this warranty.

matively appears from the whole record that it was not prejudicial. *McCandless v. United States*, 298 U.S. 342, 347-48 (1936). This is particularly true of an error in jury instructions. *Cancellier v. Federated Dept. Stores*, 672 F.2d 1312, 1316 (9th Cir. 1982) (citing *Fillippon v. Albion Vein Slate Co.*, 250 U.S. 76, 82 (1919)). Accordingly, if the record indicates that Davisco was unfairly prejudiced by the district court's instructions, we must reverse and remand the case for a new trial. We review the evidentiary ruling for an abuse of discretion. *See Tritchler v. County of Lake*, 358 F.3d 1150, 1155 (9th Cir. 2004).

## (1)

**[4]** Title 6 of the Idaho Administrative Procedures Act ("IDAPA") provides for "Rules Pertaining to the Idaho Commercial Feed Law." Section 02.06.02.250 of the IDAPA, titled "Directions for Use and Precautionary Statements," requires, *inter alia*, that all commercial feeds must be labeled with "[a]dequate directions for use and precautionary statements for safe and effective use." IDAPA § 02.06.02.250.03 ("Idaho's Milk Permeate Labeling Requirement"). Violations of Idaho's regulatory scheme may result in a "withdrawal from sale" order, IDAPA § 02.06.02.600 (Detained Commercial Feeds), and civil penalties not to exceed $10,000 per violation, IDAPA § 02.06.02.900 (Civil Penalties).

The district court instructed the jury regarding Idaho's Milk Permeate Labeling Requirement and its relationship to the Millenkamps' breach of warranty claims. In effect, the district court told the jury that a violation of Idaho's Milk Permeate Labeling Requirement is a basis to find breach of an express warranty and/or the implied warranty of fitness for a particular purpose. Davisco argues that the district court erred by instructing the jury that a violation of Idaho's Milk Permeate Labeling Requirement is a breach of these warranties. Davisco is correct.

**[5]** Idaho law recognizes that a state statute may, under certain circumstances, create the basis for *tort* liability and a private cause of action. *See Obendorf v. Terra Hug Spray Co., Inc.*, 188 P.3d 834, 840 (Idaho 2008) ("It is well established that statutes and administrative regulations may define the applicable standard of care in a negligence action and that violations of such statutes and regulations may constitute negligence per se."). There is no statute or case law, however, making the violation of a regulatory or safety statute a breach of the express or implied warranty alleged here.[3]

**[6]** In *Duffin v. Idaho Crop Imp. Ass'n*, 895 P.2d 1195 (Idaho 1995), the Idaho Supreme Court determined that compliance with regulatory provisions governing potato seed certification could not be read into a contract without evidence that compliance was a part of the bargain between the parties. *Id.* at 1205. Using the same reasoning, we conclude that the legal requirement to label milk permeate had no bearing on the Millenkamps' breach of express warranty claim, because there was no evidence of an express warranty by Davisco that the milk permeate would comply with labeling laws.

**[7]** As to the implied warranty of fitness claim, the Millenkamps argued that Davisco was aware of their intended purpose to feed permeate to calves after storing it in unrefrigerated tanks. They also argue it was unfit for that purpose as furnished to them. Idaho Code Section 28-2-315 creates an implied warranty of fitness for a particular purpose and a cause of action against a seller who fails to furnish goods suitable for the intended purpose. However, it does not create a cause of action against a seller who fails to comply with all applicable statutory labeling requirements. Evidence of label-

---

[3]The implied warranty of merchantability requires a merchant to properly label the items it sells. Idaho Code § 28 2-314(2)(e). A failure to label under Idaho's Milk Permeate Labeling Requirement may result in a breach of the implied warranty of merchantability, but the Millenkamps did not allege a breach of this warranty.

ing practices may be relevant to the extent that a label could render a product suitable for a particular purpose by instructing an otherwise uninformed buyer as to the product's proper use. The legal requirement to label, however, was irrelevant in these circumstances, because it did not affect Davisco's knowledge of the intended use or the fitness of the milk permeate as delivered. Accordingly, compliance with Idaho's Milk Permeate Labeling Requirement does not address whether Davisco breached an implied warranty of fitness for a particular purpose.

**[8]** By instructing the jury that Davisco's failure to label the milk permeate would cause the breach of an express warranty or the implied warranty of fitness for a particular purpose, the district court erroneously applied Idaho law. Because this instruction allowed the jury to improperly find Davisco liable for breach of warranties here, Davisco was unfairly prejudiced by such instructions. *See Cancellier*, 672 F.2d at 1316. Accordingly, we reverse the district court with respect to its jury instruction regarding Idaho's Milk Permeate Labeling Requirement. We also remand the case to the district court for a new trial that should not include any instruction regarding Idaho's Milk Permeate Labeling Requirement and is otherwise consistent with the remainder of this opinion.

**(2)**

**[9]** In addition to instructing the jury regarding Idaho's Milk Permeate Labeling Requirement, the district court admitted testimony concerning this same issue from the Millenkamps' expert, Dr. Kertz. He testified that the American Feed Control Officials' model feed law required sellers to label milk permeate. Davisco argues that this was an error. Because this testimony, like the jury instruction regarding Idaho's Milk Permeate Labeling Requirement, is (1) not relevant to determine whether Davisco breached the warranties alleged here and (2) prejudicial to Davisco, we hold that the district court abused its discretion in admitting it. *See*

*Tritchler*, 358 F.3d at 1155; *Geurin v. Winston Indus., Inc.*, 316 F.3d 879, 882 (9th Cir. 2002).

## C

Davisco also argues that the district court (1) made several erroneous evidentiary rulings by improperly admitting (a) Dr. Kertz's expert opinion that the milk permeate likely caused the calves' illness; (b) Exhibit 25, a letter from Davisco responding to the Millenkamps' settlement request; and (c) Exhibit 18, a letter from Cargill's nutritionist to Millenkamp; and (2) erred by (a) rejecting Davisco's proposed spoliation of evidence jury instruction and (b) failing to give the jury a "Time of Delivery" jury instruction regarding the Millenkamps' breach of warranty theories. We affirm the district court with respect to its decisions to allow Dr. Kertz's testimony and reject Davisco's spoliation of evidence and "Time of Delivery" jury instructions. We reverse the district court with respect to its admissions of Exhibits 25 and 18.

## (1)

Pursuant to the standards set forth by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Federal Rule of Evidence 702, the district court allowed Dr. Kertz's expert opinion that the milk permeate likely caused the calves' illness. The district court has discretion whether to hold a *Daubert* hearing in determining whether to admit expert testimony. *See In re Hanford Nuclear Reservation Lit.*, 292 F.3d 1124, 1138 (9th Cir. 2002). We review the district court's decision to admit Dr. Kertz's testimony for an abuse of discretion. *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1055 (9th Cir. 2003) (citing *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001)). We may only reverse the district court, if our review leaves us with "a definite and firm conviction that the district court committed a clear error of judgment in admitting that testimony." *Clausen*, 339 F.3d at 1055 (citing *SEC v. Coldicutt*, 258 F.3d 939, 941 (9th Cir.

2001)). We review the district court's decisions to admit Exhibits 25 and 18 for abuse of discretion. *See Tritchler*, 358 F.3d at 1155.

**(a)**

**[10]** Davisco argues that the district court erred by failing to hold a *Daubert* hearing before admitting Dr. Kertz's testimony and that the testimony lacked foundation. We disagree. "District courts are not required to hold a *Daubert* hearing before ruling on the admissibility of scientific evidence." *In re Hanford Nuclear Reservation Lit.*, 292 F.3d at 1138 (citing *United States v. Alatorre*, 222 F.3d 1098, 1102 (9th Cir. 2000)). Davisco deposed Dr. Kertz. The parties provided the district court with briefing on his scientific expertise and proposed testimony prior to trial. The district court could properly determine that this information comprised an adequate record from which the court could make its ruling. *See Oddi v. Ford Motor Co.*, 234 F.3d 136, 154 (3d Cir. 2000) (deciding no abuse of discretion for failure to hold an evidentiary hearing when district court had depositions and affidavits of plaintiffs' experts). In addition, Dr. Kertz testified as to his credentials, prior to the district court's ruling on the admissibility of his opinion. Accordingly, we conclude that the district court conducted an adequate inquiry before admitting Dr. Kertz's testimony (despite not conducting a separate *Daubert* hearing).

**[11]** Moreover, Dr. Kertz's scientific testimony was admissible, because it was supported by a sufficient foundation. He arrived at his conclusions using scientific methods and procedures. Those conclusions were not mere subjective beliefs or unsupported speculation. *See Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994). The Millenkamps' veterinarian, Dr. Mihlfried, had previously identified rumen acidosis as the likely cause of death in the calves he had examined. Dr. Kertz provided foundational testimony as to his background in calf nutrition and knowledge of acidosis, including

several peer reviewed publications. Dr. Kertz testified also that he analyzed the Millenkamps' feed mixture with the "Young Calf Model"—a peer reviewed computer program for evaluating a feed mixture. Dr. Kertz was not required to address all possible causes of the calves' illness with "differential diagnosis methodology." *See Clausen*, 339 F.3d at 1057. Dr. Kertz did not purport to employ differential diagnosis, and *Clausen* does not preclude the use of all other methods to determine the cause of an illness. *See id.* at 1057-61. Accordingly, the district court did not abuse its discretion in admitting this expert testimony.

### (b)

Exhibit 25 is a letter from Davisco responding to the Millenkamps' request for a $500,000 settlement prior to suit. We must determine whether the district court's decision to admit the letter was an abuse of discretion. *See Tritchler*, 358 F.3d at 1155. The district court admitted Exhibit 25 over Davisco's objection that it was irrelevant and part of settlement negotiations. *See* Fed. R. Evid. 401, 403 & 408. We conclude that the district court should not have admitted Exhibit 25.

**[12]** Rule 408 bars the admission of settlement negotiations offered to prove liability. However, it does not require exclusion when the evidence is offered for another purpose. Fed. R. Evid. 408(b). *See also Brocklesby v. United States*, 767 F.2d 1288, 1292 (9th Cir. 1985). Exhibit 25 may be settlement correspondence showing liability, but it is not admissible for that purpose. Exhibit 25 was not relevant for any admissible purpose and should not have been admitted.

**[13]** Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. We conclude that Exhibit 25 has no tendency to make any fact that is of consequence to the determination of the Mil-

lenkamps' breach of warranty claims any more or less proba-
ble than it would be without the letter. Additionally, even if
Exhibit 25 were of limited relevance, it should be "excluded
if its probative value is substantially outweighed by the dan-
ger of unfair prejudice. . . ." Fed. R. Evid. 403. Davisco wrote
the letter after the Millenkamps informed it of the problems
they had with the milk permeate. Thus, the Millenkamps
argue that it has probative value as to Davisco's knowledge
of the Millenkamps' intended use of the milk permeate at the
time of sale. However, the prejudicial effect of the threat in
Exhibit 25 to "aggressively pursue remedies" against the Mil-
lenkamps (should they file suit against Davisco) substantially
outweighed any potential limited relevance. Accordingly,
Exhibit 25 should not have been admitted, and on remand
should not be admitted in the course of a new trial.

### (c)

Exhibit 18 is a letter from Cargill's nutritionist, Matt
Schmitt, to Bill Millenkamp, discussing the cause of the Mil-
lenkamps' calves' illnesses. The district court admitted
Exhibit 18 over Davisco's objection that it was hearsay. The
court held that the letter was a Rule 803(6) business record
hearsay exception. *See* Fed. R. Evid. 803(6). We conclude
that this evidentiary ruling was an abuse of discretion. *See
Tritchler*, 358 F.3d at 1155.

[14] In order to be admissible under Rule 803(6), a docu-
ment must have been "made at or near the time" of the events
it records or describes, "by, or from information transmitted
by, a person with knowledge" of those events, "kept in the
course of a regularly conducted business activity," and part of
a business's "regular practice." Fed R. Evid. 803(6). Exhibit
18 fails to meet the requirements of Rule 803(6) for admis-
sion. It was not generated in the ordinary course of Davisco's
business, nor kept in the course of the regularly conducted
business activity. Instead, Exhibit 18 appears to have been
generated in anticipation of litigation, rather than as part of a

regular business practice. It places the blame for the calves' illness on Davisco. Moreover, there is no testimony from the letter's author nor other evidence that Exhibit 18 would have been generated, but for the Millenkamps' request. *See, e.g.*, *Latman v. Burdette*, 366 F.3d 774, 787 (9th Cir. 2004) (bank records not admissible where no evidence was offered that they were generated as part of a bank's "regularly conducted activity"). Accordingly, we reverse the district court with respect to its admission of Exhibit 18.

## (2)

Davisco also argues that the district court erred by (a) rejecting Davisco's proposed spoliation of evidence jury instruction and (b) failing to give the jury a "Time of Delivery" jury instruction. We review the district court's decision not to provide a spoliation instruction for an abuse of discretion, *see Transue v. Aesthetech Corp.*, 341 F.3d 911, 920-21 (9th Cir. 2003). Because Davisco asserts that the court misstated the law when denying its "Time of Delivery" instruction, we review that question de novo, *see Fireman's Fund Ins. Co.*, 106 F.3d at 1469.

## (a)

At the trial's conclusion, Davisco sought a jury instruction that would have allowed the jury to draw adverse inferences from the Millenkamps' alleged failure to retain evidence. Davisco argues that the Millenkamps failed to preserve (1) evidence of tissue samples collected as part of necropsies, (2) the feed provided to the Millenkamps' calves, (3) the milk permeate as of the time of the incidents, and (4) other relevant evidence. Davisco argues further that, had the district court instructed the jury regarding spoliation, it "may well have provided different responses to the liability interrogatories." We disagree.

[15] The adverse inference a jury may draw from the destruction of evidence is "based on two rationales, one evi-

dentiary and one not." *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991). "The evidentiary rationale is nothing more than the common sense observation that a party who has notice that a document is relevant to litigation and who proceeds to destroy the document is more likely to have been threatened by the document than is a party in the same position who does not destroy" it. *Id*. The second rationale has to do with "its prophylactic and punitive effects"—"[a]llowing the trier of fact to draw an adverse inference presumably deters parties from destroying relevant evidence before it can be introduced at trial." *Id*. Allowing Davisco's jury instruction serves neither rationale.

**[16]** Both rationales presume that the evidence-destroying party knew of impending litigation that would render the evidence relevant. Yet there is no evidence in the record to indicate that the Millenkamps knew that litigation would be forthcoming when they allowed the evidence to spoil. The Millenkamps' attorney apparently wrote Davisco a letter contemplating litigation on October 29, 2002, but Mihlfried conducted the necropsies on June 3 and 4, 2002—nearly five months prior to the letter. The evidence had likely deteriorated or been discarded by the time that the Millenkamps determined legal action was appropriate. Accordingly, the benefits of allowing the jury to draw negative inferences from the spoliation of evidence—that the destroyed evidence was likely damaging to the party's case—would not be realized by Davisco's proposed instruction. *Id*.

**[17]** Similarly, providing the jury a spoliation instruction would not serve the deterrence rationale in these circumstances. Under this rationale, "[a] party should only be penalized for destroying documents if it was wrong to do so, and that requires, at a minimum, some notice that the documents are potentially relevant." *Id*. Because it was not "wrong" to allow the evidence to spoil nearly five months before Davisco could show that the Millenkamps contemplated any litigious

intent, we conclude that the district court did not abuse its discretion in rejecting Davisco's proposed instruction.

**(b)**

Davisco challenges the district court's failure to instruct the jury that "the express warranty could only apply to future performance if explicitly stated." Because Davisco asserts that the district court misapplied the law in instructing the jury, we review that instruction de novo. *See Fireman's Fund Ins. Co.*, 106 F.3d at 1469. In these circumstances, we affirm the district court.

**[18]** Davisco's argument with regard to breach of express warranty is waived under the Ninth Circuit's strict interpretation of Federal Rule of Civil Procedure 51. *See Voohries-Larson v. Cessna Aircraft Co.*, 241 F.3d 707, 713-15 (9th Cir. 2001). Because Davisco did not advocate for any "Time of Delivery" instruction at trial, and only included a "Time of Delivery" instruction in its proposed jury instructions on breach of implied warranty, we conclude that Davisco cannot now assert a deficiency in the express warranty instructions.

**[19]** Further, the district court should not have given a "Time of Delivery" instruction as to these breach of express or implied warranty claims. Under Idaho law, an implied warranty may be breached by a latent defect that could not have been discovered during an inspection at delivery. *Whitehouse v. Lange*, 910 P.2d 801, 807 (Idaho Ct. App. 1996). Idaho Code Section 28-2-725(2) expressly states that, "where a warranty explicitly extends to future performance of the goods," the breach occurs at the time of such performance. While a buyer must inspect its contracted-for goods at the time of delivery to find patent defects, that same buyer is allowed a reasonable time after inspecting and accepting the goods to discover latent defects. Idaho Code § 28-2-608. Here, the Millenkamps allege a breach due to a latent defect in milk permeate—its propensity to turn acidic and thus harmful to

calves if not refrigerated. Accordingly, the defect could not have been found on inspection at delivery. The district court therefore did not misstate Idaho law by omitting the proposed "Time of Delivery" jury instructions.

## D

Davisco challenges the district court's denial of its request for an offset of the jury's damages award by the amount of Cargill's settlement under Idaho Code § 6-1606 and the district court's award of attorneys' fees to the Millenkamps. The Millenkamps cross-appeal, arguing that the district court should have awarded them pre-judgment interest. Because (1) we conclude that the district court erred in instructing the jury regarding Idaho's Milk Permeate Labeling Law and in admitting Exhibits 25 and 18, and (2) we conclude that these errors unfairly prejudiced Davisco, we reverse the district court and remand this case for a new trial. Accordingly, all issues on appeal that relate to the damages award, fees, and prejudgment interest are moot, because they are predicated upon the jury's conclusions that Davisco was liable for the Millenkamps' damages.

**AFFIRMED in part, REVERSED in part, and REMANDED.** Each party shall bear its own costs on appeal.