T.C. Memo. 2018-72

UNITED STATES TAX COURT

YASMIN AZAM AND MUHAMMAD AYUB AZAM, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 28339-14.                    Filed May 29, 2018.

Yasmin Azam and Muhammad Ayub Azam, pro se.

Stephen A. Haller and Catherine S. Tyson, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PUGH, Judge: In a notice of deficiency dated September 18, 2014,

respondent determined the following deficiencies, additions to tax, and penalties:[1]

_____

[1] Unless otherwise indicated, all section references are to the Internal
Revenue Code of 1986, as amended and in effect for the years in issue. Rule
(continued...)

[*2]

| Year | Deficiency | Addition to tax sec. 6651(a)(1) | Penalty sec. 6662(a) |
|------|------------|--------------------------------|---------------------|
| 2008 | $84,730 | $22,290 | $16,946 |
| 2009 | 43,863 | --- | 8,773 |

The issues for decision are: (1) whether petitioners had additional taxable income for the 2008 and 2009 tax years; (2) whether petitioners are entitled to deduct expenses reported on Schedule C, Profit or Loss From Business, for the 2008 and 2009 tax years; (3) whether petitioners are entitled to itemized deductions for charitable contributions for the 2008 and 2009 tax years; (4) whether petitioners are liable for additional tax for the 2009 tax year for premature distributions from a qualified retirement plan; and (5) whether petitioners are liable for the determined addition to tax and accuracy-related penalties for the 2008 and 2009 tax years.

                    FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulated facts are incorporated in our findings by this reference. Petitioners resided in California at the time they timely filed their petition. During the years in issue

---

[1](...continued)
references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

**[*3]** petitioner Yasmin Azam was employed as a financial analyst and petitioner Muhammad Azam was a self-employed realtor.

## I. Petitioners' Joint Income Tax Returns

Petitioners prepared and filed joint Forms 1040, U.S. Individual Income Tax Return, for the 2008 and 2009 tax years.

### A. Itemized Deductions

Petitioners attached Schedules A, Itemized Deductions, to their 2008 and 2009 Forms 1040 and claimed a deduction for charitable cash contributions of $8,816 for 2008 and $8,980 for 2009. The record includes a receipt from the Islamic Society of East Bay - San Francisco. The receipt, with a handwritten date of January 1, 2009, informs petitioners that "[t]he President, Board of Directors, and the Fund Raising Committee acknowledge, with thanks, your generous contribution towards the construction of the Phase-2 building (School, Mortuary etc.)." A handwritten notation made underneath this message reflects "Total Cash Contributions" of $5,540 for 2007 and $3,274 for 2008. The Islamic Society of East Bay - San Francisco receipt originally did not include any dollar amounts; Mrs. Azam later added the handwritten notations herself.

[*4]   B.  <u>Schedules C</u>

Petitioners attached Schedules C to their 2008 and 2009 Forms 1040 listing expenses related to Mr. Azam's real estate business.

Petitioners claimed deductions for the following expenses on their 2008 Schedule C:  $70,996 for contract labor, $6,300 for office expenses, $41,710 for car and truck expenses, $1,480 for other expenses (seminars), $850 for utilities, $187 for meals and entertainment, $275 for travel expenses, $2,000 for taxes and licenses, $3,250 for supplies, $3,500 for repairs and maintenance, $2,850 for legal and professional services, $550 for insurance (other than health), and $5,500 for advertising.

Petitioners claimed deductions for the following expenses on their 2009 Schedule C:  $16,658 for contract labor, $8,800 for office expenses, $39,759 for car and truck expenses, $650 for utilities, $284 for meals and entertainment, $260 for travel expenses, $4,429 for taxes and licenses, $4,680 for supplies, $2,490 for repairs and maintenance, $1,650 for legal and professional services, $2,540 for insurance (other than health), $8,400 for advertising, $8,906 for commissions and fees, and $3,800 for other expenses.

The record includes two copies of invoice No. 6399 from Irvington Auto Service dated January 15, 2008.  While the invoices are identical in most respects,

**[*5]** the odometer readings for the automobile being serviced are different--one invoice reflects an odometer reading of 123,041 miles while the other has an odometer reading that has been marked out and written over with a reading of 153,611 miles. Mrs. Azam explained the discrepancy, stating that "the odometer was changed because of the sensor; it was not reading the correct odometer". The record also includes two copies of invoice No. 6521 from Irvington Auto Service. One copy of this invoice has a date altered from April 24, 2008, to November 24, 2008, and an odometer reading altered from 127,242 miles to 214,480 miles. Finally, the record includes two copies of invoice No. 115736 from Big O'Tires. Like the Irvington Auto Service invoices, one copy of invoice No. 115736 has the date and odometer reading marked out and written over.

Mr. Azam failed to appear at trial.[2] Throughout the trial Mrs. Azam referred to a "black book" that she claims contained original receipts and logs that would substantiate petitioners' expenses. Mrs. Azam stated that she provided the black

---

[2] As a result of Mr. Azam's failure to appear, we find that he is in default and hold that he is bound by the outcome of this case. See Rule 123(a) (stating that any party failing "to plead or otherwise proceed as provided by these Rules or as required by the Court * * * may be held in default by the Court"); Rule 149(a) ("The unexcused absence of a party or a party's counsel when a case is called for trial will not be ground for delay. The case may be dismissed for failure properly to prosecute, or the trial may proceed and the case be regarded as submitted on the part of the absent party or parties.").

[*6] book to the revenue agent assigned to her case.  Mrs. Azam asserts that her black book was not returned by the revenue agent.  The revenue agent did not recall receiving a black book and testified that he returned any originals to Mrs. Azam.

### C.  Timeliness of Returns

While petitioners' 2008 Form 1040 was due on April 15, 2009, their Certificate of Assessments, Payments, and Other Specified Matters (certified transcript), reflects a filing date for a substitute for return of March 15, 2011, and a filing date for an amended return with payment of March 17, 2011.  An email that petitioners received from TaxACT--the tax preparation program they used to prepare their returns--dated April 13, 2009, states:  "Status:  Federal Electronic Return Accepted" for taxpayer Muhammad Azam and states that the return "was accepted by the Internal Revenue Service on 04/13/2009."  The TaxACT email does not state the tax year to which the accepted return relates.  Petitioners timely filed their 2009 joint income tax return.

## II. Bank Deposit Analysis

Respondent performed a bank deposit analysis for 2008 using petitioners' bank account statements.  Respondent determined that petitioners' deposits and interest for the 2008 tax year totaled $371,126.  As a result of the bank deposit

[*7] analysis, respondent determined that petitioners had unreported income of $28,245 for the 2008 tax year.

Petitioners acknowledge their failure to report $872 of interest income and $801 of ordinary dividend income on their 2008 Form 1040. Additionally, they acknowledge receiving a State income tax refund in 2008 of $498 that they did not report on their 2008 Form 1040.

Respondent also determined, through information obtained by the bank deposit analysis, that petitioners failed to include $18,245 of gross receipts for the 2008 tax year. Petitioners acknowledge their receipt of these proceeds. At trial Mrs. Azam explained that "the addition of the eighteen two five [sic] were the collection of rent from the Hawaiian. And then subsequently checked through it into Muhammad Bhattia's. So it was like in and out; it wasn't income to me."

Additionally, respondent determined that petitioners had $1,172 of unreported long-term capital gain distributions from various investment funds and $100,412 of unreported stock sales for the 2008 tax year. Respondent also disallowed the $3,000 capital loss carryover petitioners claimed for lack of substantiation. The total net capital gain adjustment in the notice of deficiency was $104,584 for 2008.

**[*8]**  Respondent filed a posttrial motion to reopen the record--which we granted--to enter Forms 1099-B, Proceeds From Broker and Barter Exchange Transactions, and account statements from National Financial Services/Fidelity Investments into the record to substantiate the net capital gain and petitioners' cost bases, if any.  Petitioners' 2008 Form 1099-B from Fidelity Investments reported cost bases for all but two stocks sold:  Applied Materials, Inc., and E Trade Financial Corp.  The Form 1099-B reflects a sale of Applied Materials, Inc. shares for $77,459 and E Trade Financial Corp. shares for $4,038.  Additionally, the Form 1099-B reported gain on only one of the stock sales for which a basis also was reported--a short-term realized gain of $10 from the sale of Micron Technology shares.  The Form 1099-B also reflects a short-term realized loss of $1,717.  For the remaining sales, the Form 1099-B reported losses disallowed by wash sales.

Additionally, respondent determined that petitioners had $28 of unreported pension income for 2009.  During 2009 they rolled over Mr. Azam's retirement account, incurring a $28 roll-over fee charged by Fidelity Investments and paid directly from his account.  Neither Mr. Azam nor Mrs. Azam had reached the age of 59-1/2 at the time of the rollover.

[*9]                                    OPINION

I.  Burden of Proof

The taxpayer generally has the burden of proving that the Commissioner's determinations in a notice of deficiency are incorrect.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  The burden of proof may shift from the taxpayer to the Commissioner in certain circumstances under section 7491(a).  Petitioners have not claimed or shown that they meet the requirements of section 7491(a) to shift the burden of proof to respondent as to any relevant factual issue.

II.  Unreported Income

Section 61(a) provides that gross income includes "all income from whatever source derived".  See Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 430 (1955).  Section 61(a)(4) and (7) specifically defines gross income as including interest income and dividend income.

Taxpayers are responsible for maintaining books and records sufficient to establish their income.  See sec. 6001; DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992).  When taxpayers fail to maintain these records, the Commissioner may determine income under the bank deposits method.  See DiLeo v. Commissioner, 96 T.C. at 867.  Bank deposits are prima facie evidence of income.  Id. at 868 (citing Tokarski v. Commissioner, 87 T.C.

**[\*10]** 74, 77 (1986)). The bank deposits method assumes that all money deposited into a taxpayer's bank account is taxable income unless the taxpayer can show a nontaxable source for the income. See id. at 868. In unreported income cases the Commissioner generally must make some minimal evidentiary showing to link the taxpayer with the disputed income. See Weimerskirch v. Commissioner, 596 F.2d 358, 360 (9th Cir. 1979), rev'g 67 T.C. 672 (1977); see also Dodge v. Commissioner, 981 F.2d 350, 353-354 (8th Cir. 1992), aff'g in part, rev'g in part 96 T.C. 172 (1991).

A. Interest and Dividend Income

Petitioners acknowledge their failure to report $872 of interest income and $801 of ordinary dividend income on their 2008 Form 1040. They have not presented credible evidence showing that any portions of these receipts do not constitute taxable income. We hold, therefore, that petitioners have additional taxable income for the full amount of the interest income and ordinary dividend income that they failed to report for 2008.

B. State Tax Refund Income

Gross income generally includes a refund of State income tax in the year received to the extent that the payment of the tax was claimed as a deduction for a

**[*11]** prior taxable year, reducing Federal income tax liability.  See secs. 61, 111(a); Brashear v. Commissioner, T.C. Memo. 2012-136, slip op. at 4.

Petitioners received a State income tax refund in 2008 but did not report this refund as income on their 2008 Form 1040.  Petitioners failed to offer proof that they did not deduct the State tax on their 2007 Form 1040.  That return is not part of the record.

We hold, therefore, that petitioners' 2008 State income tax refund constituted taxable income for the 2008 tax year.

C.  Net Capital Gain

The amount of gain from the sale or other disposition of property is the excess of the amount realized over the adjusted basis of the property.  Sec. 1001(a).  Section 1001(b) defines the amount realized as "the sum of any money received plus the fair market value of the property (other than money) received."  Generally, a taxpayer must recognize the entire amount of the gain realized from the sale or exchange of property.  Sec. 1001(c).  Additionally, a taxpayer must prove his or her adjusted basis in the property sold.  See sec. 6001; see, e.g., Zidar v. Commissioner, T.C. Memo. 2001-200.  Section 1222(3) provides that the term "long-term capital gain" means "gain from the sale or exchange of a capital asset held for more than 1 year."  Net long-term capital gains are subject to tax at the

[*12] preferential rates set forth in section 1(h). Section 852(b)(3)(B) provides that, with respect to distributions from a regulated investment company, "[a] capital gain dividend shall be treated by the shareholders as a gain from the sale or exchange of a capital asset held for more than 1 year."

The Form 1099-B for petitioners' Fidelity Investments account is sufficient to establish their cost bases in all but two of the investments. Taking into account the cost bases as reported on the Form 1099-B for petitioners' Fidelity Investments account, we find that petitioners have a taxable gain of $79,790 for the 2008 tax year from the unreported stock sales rather than $100,412 as determined by respondent.[3] Petitioners also have not produced credible evidence sufficient to show that the $1,172 unreported long-term capital gain is not taxable. We hold, therefore, that petitioners' unreported net capital gain for the 2008 tax year was $80,962 rather than $101,584. In addition, petitioners failed to substantiate the $3,000 capital loss carryover deduction claimed on their return. Therefore, we sustain an adjustment to net capital gain of $83,962.

---

[3] Petitioners' taxable gain was computed by adding the proceeds from the sales of shares from two companies--Applied Materials, Inc., and E Trade Financial Corp.--of which the cost bases were stated as unknown on petitioners' Form 1099-B. Petitioners have not offered credible evidence to substantiate their bases in these shares. This figure also adds a $10 gain petitioners realized on the sale of Micron Technology shares and subtracts the $1,717 short-term realized loss reported on their Form 1099-B.

[*13] D. Schedule C Gross Receipts/Sales

While petitioners acknowledge their receipt of $18,245, Mrs. Azam asserted at trial that they served as intermediaries between a tenant and his landlord, arguing that Mr. Bhattia's tenant wrote Mr. Azam checks that Mr. Azam deposited and later transferred to Mr. Bhattia. However, she admitted that she was not involved in the transfers herself, and neither Mr. Azam nor Mr. Bhattia--the two participants in the alleged transfers--appeared as witnesses. Without the testimony of the actual parties to the transfers or other admissible supporting evidence, we cannot accept Mrs. Azam's uncorroborated and self-serving explanations. See, e.g., Tokarski v. Commissioner, 87 T.C. at 77 (rejecting uncorroborated testimony by the taxpayer that also was inconsistent with other evidence in the record); Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1164-1165 (1946) (drawing a negative inference where the taxpayer failed to produce witnesses), aff'd, 162 F.2d 513 (10th Cir. 1947).

We, therefore, sustain respondent's determination that petitioners had unreported taxable income of $18,245 for the 2008 tax year.

E. Pension Income

A distribution from a qualified retirement plan is generally includable in the distributee's gross income for the year of distribution under the provisions of

**[\*14]** section 72. Secs. 61(a)(11), 402(a); see Sears v. Commissioner, T.C. Memo. 2010-146. Amounts deducted from the balance of a taxpayer's retirement account that constitute trustee administrative or maintenance fees, however, do not constitute distributions from the retirement account to the taxpayer within the meaning of section 408(d).

We hold that the $28 rollover fee that was debited directly from Mr. Azam's account constitutes a nontaxable administrative fee and, therefore, is not a taxable distribution under section 408(d). As we have determined that petitioners did not receive a premature distribution from their retirement plan, they are not liable for the section 72(t) additional tax.

## III. Deductions

Deductions are a matter of legislative grace, and a taxpayer must prove his or her entitlement to deductions. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Taxpayers, therefore, are required to substantiate expenses underlying each claimed deduction by maintaining records sufficient to establish the amount of the deduction and to enable the Commissioner to determine the correct tax liability. Sec. 6001; Higbee v. Commissioner, 116 T.C. 438, 440 (2001). Under the Cohan rule, where a taxpayer is able to demonstrate that he or she has paid or incurred a

[*15] deductible expense but cannot substantiate the precise amount, the Court may estimate the amount of the expense if the taxpayer produces credible evidence providing a basis for the Court to do so. Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930).

Petitioners failed to satisfy the substantiation requirements even though we gave them leeway to reconstruct expenses to take into account their concern over the missing black book. Mrs. Azam claims to have provided to the revenue agent a black book of information that contained original documentation and also claims that the revenue agent did not return copies of her records supporting reported expenses. The revenue agent does not recall receiving a black book and testified that he returned any originals to Mrs. Azam. This discrepancy bothered us at trial.

Some documentation that Mrs. Azam provided to respondent (including that for car and truck expenses and charitable contributions) did become part of the record. In addition, respondent acknowledged receiving schedules that Mrs. Azam prepared but objected to their admissibility at trial. We, therefore, offered Mrs. Azam an opportunity to reconstruct petitioners' purported expenses and invited both parties to move to reopen the record.[4] But without some sort of reliable

---

[4] We granted respondent's motion to reopen the record, filed on July 13, 2016, and took into account the information provided from Fidelity Investments,

(continued...)

**[\*16]** reconstruction, we cannot accept Mrs. Azam's unsupported testimony for the remaining expense deductions that she claims. The following exchange illustrates the problem with Mrs. Azam's attempts to reconstruct:

> The Court: All right, how about looking at 7-R or 5-R? You have 5-R in front of you, for example? It's a bank statement from Bank of America, cash maximizer statement, dated September 11th through October 7th, 2008.
>
> Ms. Azam: Yes.
>
> The Court: So then it shows on that thing --
>
> Ms. Azam: Exhibit 5-R?
>
> The Court: Yes.
>
> Ms. Azam: Yes. So you can look on the second page.
>
> The Court: Yes.
>
> Ms. Azam: It will tell you the withdrawals.
>
> The Court: Yes.
>
> Ms. Azam: The cash withdrawals.

---

[4](...continued)
see supra sec. II.C., to conclude that petitioners' capital gain was less than respondent determined. As petitioners failed to provide any additional admissible evidence of expenses or other disputed facts, their motion to reopen the record filed on July 18, 2016, was denied. Moreover, petitioners failed to file a posttrial answering brief as ordered.

**[*17]**

The Court: Yes.

Ms. Azam: For 1150 and then cash withdrawals for 2500.

The Court: Okay, but -- so you said you can look at these withdrawals and reconstruct what that money was spent for?

Ms. Azam: Yes.

The Court: Okay, now how are you going to tell me? How are you going to reconstruct what the $15,000 withdrawal was for?

Ms. Azam: Well, you know, my husband just kept the money, and then who -- when he needed to give the money, I mean like, you know, it was charitable contributions or for the contract labor or for some of his expenses, he would use that money.

We generally did not find Mrs. Azam's testimony to be credible; her explanation for discrepancies in the documents produced at trial were unconvincing. Her testimony cannot fill the gaps left by the missing documentation.

A.  Expenses Under Section 274

Section 274(d) supersedes the Cohan rule by imposing strict substantiation requirements for certain expenses such as vehicle expenses, travel expenses, and meals and entertainment expenses. Sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46007-46008 (Nov. 6, 1985).

[*18] To meet these strict substantiation requirements, a taxpayer must substantiate by adequate records or by sufficient evidence corroborating the taxpayer's own statement: (1) the amount of the expense; (2) the time and place of the travel or use; and (3) the business purpose of the expense. Sec. 274(d). To substantiate by adequate records, the taxpayer must provide: (1) an account book, log, or similar record and (2) documentary evidence, which together are sufficient to establish each element with respect to an expenditure. Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46008 (Nov. 6, 1985).

Section 274(d) contemplates that no deduction or credit shall be allowed on the basis of the taxpayer's mere approximations or unsupported testimony. Although a contemporaneous log is not required, corroborative evidence to support a taxpayer's reconstruction "must have a high degree of probative value to elevate such statement" to the level of credibility of a contemporaneous record. Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46008 (Nov. 6, 1985).

While we accept that petitioners did incur vehicle, travel, and meals and entertainment expenses, they have given us no credible basis for determining the amounts of these expenses. Petitioners submitted no evidence in support of the claimed deductions for travel or meals and entertainment expenses, and the

**[\*19]** documentary evidence they presented in support of deductions for car and truck expenses was not reliable. The odometer readings shown on invoices they submitted conflict with the readings on invoices respondent presented at trial. Mrs. Azam's assertion that the conflicting odometer readings were a result of a broken odometer is not credible and does not explain why the invoices themselves disagree.

We hold, therefore, that petitioners are not entitled to deductions for car and truck expenses, travel expenses, or meals and entertainment expenses for the years in issue.

B. Remaining Schedule C Deductions

Petitioners also failed to offer evidence to substantiate the Schedule C expense deductions they claimed for the taxable years in issue. Mrs. Azam, at trial, acknowledged that these expenses relate to Mr. Azam's business as a realtor. The record does not contain supporting documentation, nor did Mr. Azam testify regarding them.

We hold that petitioners are not entitled to the Schedule C expense deductions they claimed for the 2008 and 2009 tax years.

[*20] C. Charitable Contribution Deductions

A taxpayer is ordinarily entitled to deduct charitable contributions made during the taxable year to or for the use of certain types of organizations. Sec. 170(a)(1), (c). A taxpayer is required to substantiate charitable contributions and must maintain records to do so. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs. A cash contribution of less than $250 may be substantiated with a canceled check, a receipt, or other reliable evidence showing the name of the donee, the date of the contribution, and the amount of the contribution. Sec. 1.170A-13(a)(1), Income Tax Regs. Contributions of cash or property of $250 or more generally require the donor to obtain a contemporaneous written acknowledgment of the donation from the donee. Sec. 170(f)(8)(A); Villareale v. Commissioner, T.C. Memo. 2013-74.

The only substantiation offered to prove petitioners' cash charitable contributions was a receipt on which Mrs. Azam had written the amounts of petitioners' purported cash contributions. This receipt, therefore, does not satisfy the requirements of section 170(f)(8)(A) or section 1.170A-13(a)(1), Income Tax Regs. Again, petitioners have given us no credible evidence on which we can rely to determine the amounts of their charitable contributions; while we can find that they made contributions, we cannot reliably estimate the amounts.

**[\*21]** We find, therefore, that petitioners are not entitled to deduct the charitable contributions that they reported on their 2008 and 2009 joint income tax returns.

IV. Addition to Tax and Penalties

The Commissioner bears the burden of production with respect to a taxpayer's liability for additions to tax and accuracy-related penalties, requiring the Commissioner to come forward with sufficient evidence indicating that imposition of the additions to tax and penalties is appropriate. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. at 446. In addition, as part of that burden the Commissioner must show that he complied with the procedural requirements of section 6751(b)(1) for the section 6662(a) accuracy-related penalty imposed. See secs. 6751(b)(2)(A) (providing that the supervisory approval requirement does not apply to section 6651 additions to tax), 7491(c); Graev v. Commissioner (Graev III), 149 T.C. __, __ (slip op. at 13-14) (Dec. 20, 2017), supplementing and overruling in part Graev II, 147 T.C. 460 (2016). Section 6751(b) requires the Commissioner to show that penalties assessed under section 6662 were "personally approved (in writing) by the immediate supervisor of the individual making such determination". See Graev III, 149 T.C. at __ (slip op. at 13-14).

Once the Commissioner satisfies the burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's

[*22] determination as to the application of additions to tax or penalties is incorrect or that the taxpayer has an affirmative defense such as reasonable cause. See Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446-447.

A. Section 6651(a)(1) Addition to Tax

Section 6651(a)(1) authorizes the imposition of an addition to tax for failure to file a return timely unless it is shown that such failure is due to reasonable cause and not due to willful neglect. See United States v. Boyle, 469 U.S. 241, 245 (1985). Whether a taxpayer has "reasonable cause" within the meaning of section 6651(a)(1) depends on whether the taxpayer exercised "ordinary business care and prudence" but was nevertheless unable to file the return within the prescribed time. Boyle, 469 U.S. at 246; sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

A tax return filed electronically by an authorized electronic transmitter is deemed filed on the date of the electronic postmark given by the authorized electronic return transmitter. Sec. 301.7502-1(d)(1), (3)(ii), Proced. & Admin. Regs. An electronic postmark is defined as "a record of the date and time * * * that an authorized electronic return transmitter receives the transmission of a taxpayer's electronically filed document on its host system." Id. subpara. (3)(ii).

Petitioners' certified account transcript reflects a filing date of a substitute for return of March 15, 2011, and a filing date of an amended return with payment

[*23] of March 17, 2011--well after the April 15, 2009, due date. Respondent has met his burden of production with respect to the section 6651(a)(1) addition to tax. Petitioners claim that the email they received from TaxACT shows that the return was actually filed by April 13, 2009. While the email describes an "e-filed return", the email contains neither an electronic postmark stating the date and time the electronic return was received nor the year to which the electronic return relates. Therefore, we find that the email petitioners received from TaxACT does not prove that they timely filed their 2008 income tax return. In light of our concerns regarding Mrs. Azam's credibility noted above, her uncorroborated testimony is not sufficient to link the email with the return. Further, petitioners have not demonstrated that they exercised the ordinary care and prudence necessary to absolve them of liability for the section 6651(a)(1) addition to tax.

We hold, therefore, that petitioners are liable for an addition to tax for failing timely to file their 2008 income tax return pursuant to section 6651(a)(1).

B. Section 6662(a) Penalty

Finally, section 6662(a) and (b)(1) and (2) imposes an accuracy-related penalty equal to 20% of the portion of an underpayment of tax required to be shown on a return that is attributable to "negligence or disregard of rules or regulations" and/or a "substantial understatement of income tax." Negligence

[*24] includes "any failure to make a reasonable attempt to comply with the provisions of this title." Sec. 6662(c). We have defined negligence as the failure to exercise due care or the failure to do what a reasonable person would do under the circumstances. See Allen v. Commissioner, 92 T.C. 1, 12 (1989), aff'd, 925 F.2d 348 (9th Cir. 1991); Neely v. Commissioner, 85 T.C. 934, 947 (1985). An understatement of income tax is a "substantial understatement" if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d).

We initially must determine whether respondent has satisfied the section 6751(b) procedural requirements for the section 6662(a) accuracy-related penalties imposed. Trial of this case was held, and the record was closed, before the issuance of our Opinion in Graev III, which vacated our prior holding in Graev II and held that the Commissioner's burden of production under section 7491(c) includes showing supervisory approval as required by section 6751(b). In light of the Court's decision in Graev III, we ordered respondent to file a response addressing the effect of section 6751(b) on this case and directing the Court to any evidence of section 6751(b) supervisory approval in the record, and petitioner to respond. Respondent was unable to point to any evidence in the record that satisfies his burden of production with respect to section 6751(b)(1), and he filed a

**[\*25]** motion to reopen the record to include a heavily redacted 12-page interoffice memorandum from "Associate Area Counsel (San Francisco, Group 1) (Small Business/Self- Employed)" to the Appeals officer regarding "Review of Proposed Notice of Deficiency" for petitioners for 2008 and 2009 that recommends imposition of the section 6662(a) penalty (in lieu of a section 6663 fraud penalty). The memorandum is signed by Brenn C. Bouwhuis and handwritten initials and a handwritten date appear at the bottom of its first page. Respondent's motion to reopen the record also seeks to introduce declarations by the attorney who prepared the memorandum and his supervisor regarding circumstances giving rise to the memorandum and the initials. Respondent did not request further trial on this matter. Petitioners filed a response to our order and respondent's motion objecting to the introduction of any new evidence.

The decision to reopen the record to admit additional evidence is within our discretion. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 331-332 (1971); Nor-Cal Adjusters v. Commissioner, 503 F.2d 359, 363 (9th Cir. 1974) ("[T]he Tax Court's ruling [denying a motion to reopen the record] is not subject to review except upon a demonstration of extraordinary circumstances which reveal a clear abuse of discretion."), aff'g T.C. Memo. 1971-200. We "will not grant a motion to reopen the record unless, among other requirements, the

**[\*26]** evidence relied on is not merely cumulative or impeaching, the evidence is material to the issues involved, and the evidence probably would change the outcome of the case." Butler v. Commissioner, 114 T.C. 276, 287 (2000); see also SEC v. Rogers, 790 F.2d 1450, 1460 (9th Cir. 1986) (trial court "should take into account, in considering a motion to hold open the trial record, the character of the additional * * * [evidence] and the effect of granting the motion"), overruled on other grounds by Pinter v. Dahl, 486 U.S. 622 (1988); Coleman v. Commissioner, T.C. Memo. 1989-248, 1989 WL 52685.

First, we must determine whether the additional evidence respondent seeks to introduce is admissible. While rule 802 of the Federal Rules of Evidence generally provides that hearsay (an out-of-court statement offered to prove the truth of the matter asserted) is inadmissible, rule 803(6) of the Federal Rules of Evidence provides an exception for records of a regularly conducted activity. See Rule 143; Fed. R. Evid. 801(c). Specifically, rule 803(6) of the Federal Rules of Evidence provides that "[a] record of an act, event, condition, opinion, or diagnosis" is admissible if:

> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

**[*27]** (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Respondent, citing our Opinion in Clough v. Commissioner, 119 T.C. 183 (2002), asserts that the counsel's memorandum is excepted from the general prohibition against hearsay under rule 803(6) of the Federal Rules of Evidence, and that the memorandum can be authenticated under rule 902(11) of the Federal Rules of Evidence by declaration and admitted without oral testimony. But the declarations respondent offered only state that the memorandum was prepared and reviewed in the course of the declarant's duties. The declarations do not cite rule 803(6) or rule 902(11), nor do they address the other necessary elements of rule 902(11). Specifically, neither declaration states that the memorandum was generated in the ordinary course of the IRS' activities or kept in the course of those regularly conducted activities. See Millenkamp v. Davisco Foods Int'l, Inc., 562 F.3d 971,

**[\*28]** 980 (9th Cir. 2009). And there is no question that the memorandum was prepared in anticipation of litigation and states that it was prepared at the specific request of the Appeals officer. See id. While we might infer that IRS attorneys regularly prepare these sorts of memoranda and retain them, we do not believe our inference should substitute for declarations that satisfy the evidentiary requirements.[5]

Moreover, even were we to admit respondent's memorandum as a business record, we still would not know whose initials are on the first page unless we either admit the declarations for more than just authentication under rule 902(11) of the Federal Rules of Evidence or have further trial to take testimony from the declarants. Respondent identified no exception to the hearsay rule that would allow us to admit the declarations for a purpose beyond authentication of the underlying business record, see Clough v. Commissioner, 119 T.C. at 189-190, and did not ask for further trial. We decline to order further trial on our own under these circumstances. See Rogers, 790 F.2d at 1460-1461 (citing Zenith Radio Corp., 401 U.S. at 332). Reopening the record to admit the memorandum without

---

[5] We do not reach the question of whether the memorandum would constitute a business record even if proper declarations had been offered but note that it is not clear to us that this memorandum would constitute a record of regularly conducted activity.

[*29] the declarations will not change the outcome of the case because the memorandum alone will not satisfy respondent's burden of proving that the penalty was approved by the immediate supervisor.  See Butler v. Commissioner, 114 T.C. at 287.

We, therefore, will deny respondent's motion to reopen the record and hold that respondent has not carried his burden of proof.  Nonetheless we advise petitioners that their failure to keep records was not what a reasonable person would do under the circumstances.

We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

An appropriate order will be issued, and decision will be entered under Rule 155.